# Commonwealth of Pennsylvania ex rel. Attorney General et al., Appts., *v.* John B. Reed et al.

Mt. Carmel, a borough incorporated under the act of April 3, 1851, was laid out in accordance with a draft duly filed upon a tract of land through which a turnpike company, chartered under the act of March 25, 1805, was maintaining its line. By the act of March 27, 1830, the company was authorized to change the line in any borough to accommodate the citizens, and accordingly gave Mt. Carmel the privilege of making such a change. The streets of Mt. Carmel, as laid out in the draft, were dedicated, and as fast as they were completed the turnpike was abandoned and its site reoccupied by the owners of the fee, until only a small part remained. By an agreement in 1866, the borough covenanted, in consideration of the privilege of changing the route, to keep the turnpike within its limits in repair. In 1882 citizens of Mt. Carmel petitioned the borough authorities to open a street which would cross the remaining portion of the turnpike at right angles; and it was authorized by them in 1884. Work was begun and resulted in obstructing the turnpike by the street, which was at a grade six feet higher than the turnpike. Whereupon the Commonwealth *ex rel.* the Attorney General and certain citizens of Mt. Carmel, filed a bill for an injunction to restrain the borough authorities from so obstructing the turnpike, alleging that proceedings under the act of April 22, 1856, in the quarter sessions were prerequisite and that the defendants had no right in opening a street to obstruct another public highway. *Held,* that an injunction would not be granted, although perhaps the remaining portion of the turnpike should have been first vacated by ordinance of the council, as provided in the act under which the borough was incorporated.

(Argued April 26, 1887. Decided May 9, 1887.)

January Term, 1886, No. 450, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Appeal from a decree of the Common Pleas of Northumberland County dismissing a bill in equity. Affirmed.

This was a bill for an injunction to restrain the defendants, the chief burgess, assistant burgesses, members of the town coun-

NOTE.—Streets may be vacated when laid out by the borough (Com. v. Bullock, 2 Montg. Co. L. Rep. 5); or when dedicated (*Re* Osage Street, 90 Pa. 114; Fisher v. Lynch, 2 Northampton Co. Rep. 330). The vacation must be by ordinance or resolution after the street has actually been opened. Com. v. Bullock, 2 Montg. Co. L. Rep. 5. But if it has not in fact been opened, the ordinance directing the opening may be repealed at any time (Myers v. South Bethlehem, 149 Pa. 85, 30 W. N. C. 218, 24 Atl. 280); or the vacation may be incidental to a narrowing of the street (*Re* Wyoming Avenue, 5 Pa. Dist. R. 767, 8 Kulp. 269).

cil, and supervisor of the borough of Mt. Carmel, from obstructing a road.

The facts as they appeared before E. W. Greenough, Esq., the master appointed by the court below, were stated in his report, which was as follows:

The Centre Turnpike Road running from the city of Reading, Pennsylvania, to Sunbury, in the same state, was laid out and opened by the Centre Turnpike Road Company under and by virtue of a charter granted by the commonwealth, by act of assembly of March 25, 1805, and supplements of April 4, 1807, and March 27, 1830. In its route it passed over the site of the present borough of Mt. Carmel which was incorporated by the court of quarter sessions of Northumberland county, Pennsylvania, November 3, 1862, under the act of April 3, 1851, entitled "An Act Regulating Boroughs."

The general course and direction of the said turnpike across the said borough of Mt. Carmel was from southeast to northwest; crossing the streets and lots as marked and laid out on the general map or plan of said borough, diagonally. The act of March 27, 1830, above mentioned, by the terms of the first section thereof empowered the said turnpike company "to alter the course of its road at or near any borough, town, or village which has been or may be laid out adjoining said road, so as in the best manner to accommodate the inhabitants of said borough, town, or village, and the citizens generally;" and by the second section of the said act of March 27, 1830, it was provided that "so much of the present road as may be vacated and rendered useless, by any alteration in the course thereof, which may be made in pursuance of this act, shall revert to the original owners of the land," etc.

In pursuance, therefore, of the provisions of this act the officers of the said turnpike company gave to the borough of Mt. Carmel "privilege" to alter the course of said turnpike road, and on the 27th day of September, 1866, the corporate officers of the said borough signed the following agreement:

"In consideration of the privilege granted by the Centre Turnpike Road Company to the borough of Mt. Carmel to alter the route of the turnpike road through the said borough of Mt. Carmel, we, the burgess and town council, in behalf of the said borough of Mt. Carmel, having completed the new road, do hereby agree to hereafter and forever keep the said road and bridges

through the said borough in good order and repair at the proper expense of the said borough of Mt. Carmel; signed by five members of the town council, the chief burgess, and the secretary."

By the evidence it appears that the said turnpike road was disused and abandoned by the public, as the streets of the said borough were opened and put in condition for use, and as the road became abandoned its site was occupied by the owners of the fee, and buildings were erected upon some of the several portions of the turnpike where it fell within lot lines; hence, it is found that from the time of entering into this said agreement, down to about the time of beginning the action, all of the said turnpike road lying within the limits of the said borough was abandoned, and the streets of the said borough used by the public in place thereof, except a small portion extending from the junction of Maple street and Mt. Carmel avenue in a northwesterly direction to the northern line of the said borough.

Mt. Carmel avenue runs east and west; Vine street, another of the public highways of said borough, runs north and south. Along the northern edge of Mt. Carmel avenue is a steep declivity, descending to the bed of Shamokin creek. In consequence of this declivity none of the streets of said borough running north and south were opened and graded for use, north of the line of Mt. Carmel avenue and south of Shamokin creek. The reason was that the expense necessary to be incurred would be very great.

In 1882, certain citizens of the said borough presented a petition to the town council, asking that Vine street, one of the streets of said borough, should be opened to the northern line of the borough; and on August 11, 1882, by resolution of council it was decided to open and complete said street. No action, however, was taken at the time towards completing said Vine street; and it was not until 1884 that the matter was again taken up by council.

On May 5, 1884, the borough council, by resolution, instructed the street committee to have a survey made for the purpose of ascertaining the grade. Up to this time a portion of Vine street lying south of the line of Mt. Carmel avenue was opened and used by the public. The balance of said Vine street extending from the north side of Mt. Carmel avenue, north, to the northern line of the borough, existed only on paper, being so laid out on the original map or plan of said borough. In completing

Vine street, according to the grade fixed by the borough surveyor, it was necessary to cut down below the existing grade of the street from a point south of the line of Mt. Carmel avenue across said avenue and some distance beyond, altogether about 200 feet. At this point the line of the turnpike road was reached, running nearly at right angles to Vine street. The grade of the turnpike was, however, below the grade of said Vine street, at their point of intersection; and an earth and stone filling was made across the said turnpike road, about 50 feet wide and of an average height of 5½ to 6 feet. Beyond the turnpike the earth filling continued the same width to the south bank of the Shamokin creek, which was crossed by a bridge 16 or 17 feet wide inside the railings. Beyond the bridge the said street was filled to a width of about 50 feet to Railroad avenue, the northern limits of said borough.

This action grows out of the fact that the grading of said Vine street, across the said Centre Turnpike Road, naturally and necessarily so obstructed the latter as to render it impassable. The embankment across the turnpike is 6 or 7 feet high on the lower or west side of Vine street and 5 or 6 feet on the upper or east side. The prayer of the complainants is that the respondents be restrained "from obstructing the public road or highway commonly called the Centre turnpike, from its intersection with Mt. Carmel avenue and Maple street to the northern limits of the borough of Mt. Carmel," etc.

The said turnpike afforded to the inhabitants of the said borough and of the township north thereof the only means of intercommunication until the completion of Vine street aforesaid. By means of said Vine street (as completed) and Railroad avenue, connection with the turnpike north of the borough is now established.

On August 1, 1884, certain of the citizens of said borough filed a bill praying for a special injunction, and on August 6 the court made a decree granting said preliminary injunction; and on the same day the court granted a further rule on complainants to show cause why the special injunction should not be dissolved, because the attorney general had not been made a party to the complaint. Said rule was argued and held under advisement by the court. Complainants, after notice to respondents, laid the matter before the attorney general, asking him to intervene. Said attorney general, concluding that the case was a

proper one for his intervention, applied to the court January 28, 1885, for leave to intervene and asked for a rule on respondents to show cause why prayer should not be granted and the record amended accordingly. February 2, after hearing, rule was made absolute, and the record amended by the addition of the commonwealth of Pennsylvania *ex relatione* Lewis C. Cassidy, Attorney General.

December 30, 1884, however, the court had made absolute the rule of August 6, 1884, dissolving the special injunction "without prejudice to either party," for the reason that the attorney general was not a party. Immediately upon the dissolution of the special injunction the respondents proceeded in their work of completing said Vine street, and in doing so rendered the said turnpike impassable.

The questions arising here are: Had the respondents a right to open said Vine street? And did they proceed in the manner prescribed by law?

If they had the right and proceeded in the prescribed manner, then the court has not power to enjoin them. Among the powers vested in the corporate officers of a borough is the power to "survey, lay out, enact, and ordain such roads, streets, lanes, alleys, courts, and common sewers as they may deem necessary, and to provide for, enact, and ordain the widening and straightening of the same." Purdon's Digest, p. 203, § 49, being part of act of April 3, 1851, under which said borough was incorporated.

The borough of Mt. Carmel aforesaid was incorporated by the court of quarter sessions of Northumberland county, November 3, 1862, under the above-mentioned act of assembly, and a map or plan of the said borough was recorded in the office for the recording of deeds of the said county in Deed Book S. S. p. 582. Among the streets of said borough as they appear by the said map or plan is Vine street aforesaid. By decree of the court incorporating said borough, Vine street was therefore declared to be a public highway, not only for a portion of its length, but in entirety. It happens, however, that for certain reasons it was not necessary or expedient to open the said Vine street its entire length at the same time, and therefore a portion of it remained disused for a period of some years after another portion thereof was opened and used by the public.

In the case of Ake v. Mason, 101 Pa. 17, the court says:

"Where a plan for laying out a street is confirmed by the proper court, the public record of such proceeding is notice of the location of the street to purchasers of land which will be crossed by it when opened."

It is in evidence that said Vine street is named as the boundary in conveyances of land lying along the line of that part of said street opened about the time of and after the institution of these proceedings.

The complainants maintain that the action of the respondents in opening said Vine street without having made application to the court of quarter sessions, for the appointment of viewers, as provided for in the act of April 22, 1856 (a supplement to the act of April 3, 1851), (Purdon's Digest, §§ 141, 142, p. 212), was without warrant of law.

The first section of said act of 1856 is as follows: "Whenever the burgesses and town council of any borough shall open, or be about to open, any streets or alleys therein, or to widen or extend the same, it shall be lawful for said burgesses and council, or a majority of them, to apply by petition to the court of quarter sessions of the peace of the proper county, setting forth the facts and describing the locality of such streets or alleys, and praying said court to appoint seven disinterested freeholders of such borough, who, after being first duly sworn or affirmed to perform their duties under this act with impartiality and fidelity, shall proceed to view the premises described in said petition, having regard to advantages and disadvantages caused to the several properties along the line of and adjoining said streets and alleys, and shall assess and allow to all persons injured thereby such damages as they shall have sustained respectively over and above all advantages, and shall also make assessment for contribution upon all such properties as shall be benefited by the opening, widening, or extension of said streets and alleys, such sums respectively as they may have been benefited over and above all disadvantages."

Second section of said act of 1856: "The said viewers shall make report of their proceedings in writing to the next session of said court, describing the properties upon which assessments have been made, specifically stating whether for contribution or for damages, with the amounts respectively, and the said court may at the next session thereafter, or at any subsequent session, on the hearing of such parties as choose to contest the same,

modify, approve, and confirm the said report, which confirmation shall be final and conclusive upon all parties; and the said burgesses and council may proceed to collect all such damages and assessments for contribution in the same manner as other debts due such boroughs are by law collectible."

The said Vine street, however, had already been declared a public highway by decree of the court of quarter sessions at the time of the incorporation of the borough. By the recording of the map or plan of said borough, notice was given of the location of its several public highways, among which was Vine street aforesaid. Moreover, a portion of said Vine street was in use as a public highway for a long period of time prior to the commencement of these proceedings. But the public did not see fit to use said Vine street all of its entire length, immediately upon its dedication as a public highway. From this fact, however, it cannot be presumed that an abandonment by the public of its right ever to use said Vine street as a public highway was intended. In opening said Vine street, therefore, the said respondents, the corporate officers of the said borough, were opening a street already laid out on the map or plan of the borough, a street already, by decree of court, a public highway, not used by the public as a highway because the natural conditions of the soil over which the route of the said street passed, rendered such use impossible.

The act of 1856 provides a way for opening streets and alleys where damages "to properties along the line of and adjoining said streets and alleys" occur. Prior to the passage of this act, parties injured petitioned the court for a jury of six to view and assess damages arising from the opening of the public highway; but the owners of the several properties along the line of and adjoining said Vine street, do not appear, complaining of damages to their said properties, and there is no evidence to show that the said owners object to the opening of the said street. But the attorney general and certain citizens of the said borough of Mt. Carmel come and ask the court to restrain the said respondents, because in opening said Vine street they have obstructed "another public highway," to wit, the said Centre turnpike. "When a highway, which has once been the bed of an artificial road belonging to a turnpike company, comes by law within the control of the corporate authorities of a city, they are not bound to keep it in repair as an artificial highway, but

merely so that it may be safe and convenient for ordinary travel." Com. *ex rel.* Atty. Gen. v. Philadelphia, 11 W. N. C. 485.

If the Centre Turnpike Road be not vacated in a proper and legal manner, the corporate officers of the borough of Mt. Carmel may be under obligation to keep it in repair "so that it may be safe and convenient for ordinary travel." But in the master's opinion it would be improper to enjoin the respondents from obstructing the said turnpike by the opening of said Vine street, for the natural and necessary effect of that would be to render impassable said Vine street, which is also a public highway, and more properly one of the highways of said borough than the said turnpike is, because it is laid out upon the map or plan of the borough as such, but the turnpike does not so appear. The decree of the court incorporating said borough gives the corporate officers official authority to open the highways thereof. Wilkes-Barre's Appeal, 100 Pa. 313.

As before stated, the filling and grading said Vine street across the turnpike is about 6 feet high and the turnpike at the point of intersection is 17 to 19 feet wide. It is clear, therefore, that the removal of this filling would effectually prevent the use of Vine street, and it would seem hardly consistent in the court to prevent the corporate officers of a borough from opening the public highways of the same, because the proper completion and grading of a certain street or alley would obstruct another highway in the said borough, and one, too, not laid down upon the general map or plan of the same. But at the same time it might be both consistent and proper for the court to compel the corporate officers to so restore and put in repair the highway thus obstructed that it might again become safe and convenient for travel. And just here arises the question whether the said turnpike, to wit, the portion thereof lying within the limits of the said borough, and now in dispute, was a public highway at the time of its obstruction in the manner aforesaid.

Referring again to the act of 1830, which was a supplement to the act of 1805, incorporating the said Centre Turnpike Company, it appears that powers were conferred upon the said turnpike company by the legislature to alter the route of the turnpike road at or near any city, borough, or village so as best to accommodate the inhabitants thereof, and the citizens generally.

In the case of the said borough of Mt. Carmel just such a contingency arises as this act was intended to make provision for. By the arrangement of the streets, lots, etc., of the said borough, it was deemed to the best interests of the citizens thereof and the citizens generally that the route of the turnpike through the said borough should be abandoned and the public highways thereof, as laid out on the map or plan of the same, substituted therefor; hence, as before stated, the turnpike was so abandoned, as the streets of the borough were put in such repair that they could be used in place thereof, the corporate officers bearing the expense of maintaining the turnpike until the other highways were ready for use; and it appears also by the evidence that as fast as the turnpike became disused the portion thereof falling within the lot lines were fenced up, built upon, and in one way and another taken possession of by the owners of the fee in just such manner as the act of 1830 aforesaid, by its second section, provided.

The said turnpike, therefore, was vacated and abandoned from the southeastern part of said borough northwest to the intersection of Mt. Carmel avenue and Maple street aforesaid, by the operation of this act of 1830 and by the agreement of the corporate officers of said borough (with the officers of said turnpike company) to substitute other public highways in place of the said turnpike road, and by the actual carrying into effect of the terms of said agreement, no other proceedings to vacate said turnpike within the limits of said borough having ever been established, nor were any necessary.

The act of 1830 aforesaid provided for the vacation of the said turnpike within the limits of boroughs, etc., and general acts providing for the vacating of roads subsequently passed need not necessarily conflict with or repeal said act of 1830. For "if there be two affirmative statutes on the same subject, there must be a clear inconsistency or repugnancy that the later one may repeal the former." *Re* Somerset & S. Road, 74 Pa. 61.

This substitution of one highway for another was not completed at once, however, but gradually, and piece by piece. For a long time, moreover, the corporate officers of the borough had ceased to substitute streets in place and lieu of said turnpike, for the reason that there remains thereof but the small portion from the intersection of Mt. Carmel avenue and Maple street to the northern limits of the borough; and as before stated, the expense

and difficulty of completing Vine street or any of the streets running north across Mt. Carmel avenue and across Shamokin creek to the north bank thereof, naturally deprived the corporate officers from entering upon any such undertaking as long as it could be avoided, and as the said turnpike, *viz.,* the portion above referred to, afforded and approached to the northern limits of the borough and the turnpike beyond, the completion of the streets of the borough designed to take its place was naturally deferred as long as possible.

At last, however, in 1882, as before stated, certain citizens of said borough petitioned for the opening and completion of the balance of Vine street, and the borough council resolved to do so. The work, however, was still delayed; and it was not until 1884 that measures were taken to bring the undertaking to a conclusion, and then the borough council, proceeding in just the same manner as their predecessors had done in similar contingencies, open, grade, and fully complete said Vine street in such manner that it can be substituted for and take the place of the only portion of said turnpike not yet abandoned.

By reference to the agreement between the officers of the turnpike company and the officers of the said borough, it does not appear that it was proposed or intended to substitute the streets and alleys of said borough in place of only a part of the turnpike within the borough limits; but on the contrary it is clear that the turnpike company proposed to turn over to the borough all of the turnpike lying within the boundaries thereof; and on the part of the borough officers it is equally manifest that they on their part intended and proposed to maintain and keep in repair all of the turnpike in the borough until they had completed the streets and alleys of the borough and substituted them for the turnpike. Nor is there any ground for presumption that either party to this ageement contemplated the maintenance of the turnpike beyond the time when, by the completion of the streets, etc., of the said borough, it ceased to be a necessity to the public. In compliance with the said agreement the corporate officers continued to maintain and keep in repair the small portion of the turnpike now in dispute, down to about the time they were ready to replace it with Vine street.

In the opinion of the master the completion of Vine street, in manner aforesaid, in accordance with the agreement above mentioned, under the terms and provisions of the act of 1830 de-

tailed above, simply completes the act of vacating and abandoning the said turnpike within the borough limits, in the manner provided for and pointed out by the law governing this case; and he is of the further opinion that the said turnpike, to wit, the portion here in question, ceased to be a public highway, as soon as the corporate officers of the borough performed their part of the agreement in substituting the new road in place thereof.

In view of the facts of the case and the law governing the same, as interpreted by the master, he would respectfully recommend that a decree be entered as follows, to wit, that the bill be dismissed and the complainants pay all the costs and fees.

Several exceptions to the master's report were filed by the plaintiffs; upon dismissing the exceptions and confirming the report Rockefeller, P. J., March 22, 1886, delivered the following opinion:

I refer to what I have already said in this case in two former opinions, filed August 6, 1884, and December 30, 1884, respectively, especially to those parts of said opinions relating to the merits of the case. The authority of the town council of the borough of Mt. Carmel to open Vine street cannot be denied. In the case of Sower v. Philadelphia, 35 Pa. 231, cited by Chief Justice Mercur, in the case of Ake v. Mason, 101 Pa. 21, it was held that a resolution of councils directing the opening of a street laid down in the general plan of the town has the same force as an ordinance for that purpose.

No lot or land owner is questioning the right of the borough in the present case to open the street without first paying or securing to be paid the damages that they have or may sustain. Indeed, the conveyances of lots bounding thereon describe the street as a boundary. The complainants do not question or dispute this right, as appears by their ninth exception to the master's report. As was shown and admitted on the former hearings of this case, and as I will presently show by the facts in evidence before the master, that portion or part of the turnpike road extending from the junction of Maple street and Mt. Carmel avenue to the northern line of the borough was never vacated, and remains a public highway today; so that the only or at least the principal question to be determined in the case is whether the town council of a borough have the right to open a

street laid down in the general plan of the town if, in doing so, it will necessarily and unavoidably close up and obstruct another highway not laid down in the town plan, but which has become a highway by having been the bed of an artificial road belonging to a turnpike company and on being abandoned by the company became a public road under the general laws of the state. That the corporate officers of the borough are under obligations to keep that part of the turnpike road within the borough limits and not vacated in repair, so that it may be safe and convenient for ordinary travel, is clearly shown in the case of Com. *ex rel.* Atty. Gen. v. Philadelphia, 11 W. N. C. 485.

In the master's opinion it would be improper to enjoin the respondents from obstructing the turnpike by the opening of Vine street, for the reason that the natural and necessary effect of that would be to render impassable said Vine street, which is also a public highway and more properly one of the highways of the borough than the turnpike, because it is laid out upon the map or plan of the borough as such and the turnpike does not so appear. Whether this is a correct opinion or not is the vital question in the case.

[I agree with him that it might be both consistent and proper for the courts to compel the corporate officers to restore and put in repair the highway thus obstructed that it might again become safe and convenient for travel, if that were reasonably practicable. But, as I understand the evidence, it is not reasonably practicable so to do. This, however, may be a matter for future investigation.] If it can be done, the case of Com. *ex rel.* Atty. Gen. v. Philadelphia, 11 W. N. C. 485, is authority on the subject.

As to whether that part of the turnpike in dispute has ever been vacated, I think the case is clear. The act of March 27, 1830, authorized the turnpike company to alter the course of its road at on near any borough, town, or village which has been or may be laid out adjoining said road so as in the best manner to accommodate the inhabitants of said borough, town, or village, and the citizens generally. It is manifest from the evidence that prior to the 27th of September, 1886, the turnpike company had given the borough of Mt. Carmel the privilege to alter the route of the turnpike through the borough, and that on or previous to that day the borough had completed a new road by the opening of Oak street and perhaps other streets

which the company used instead of the bed or route of the old road; and the corporate officers of the borough on that day agreed in writing with the turnpike company to thereafter "and forever keep the said road and bridges through the said borough in good order and repair at the proper expense of the said borough of Mt. Carmel."

The master finds "that from the time of entering into this said agreement down to about the time of the beginning of this action (August 1, 1884) all of the said turnpike road lying within the limits of the said borough was abandoned and the streets of said borough used by the public in place thereof, except a small portion extending from the junction of Maple street and Mt. Carmel avenue in the northerly direction to the northern line of said borough."

It is this latter part of the turnpike that this dispute is about, and it is this that Richard Carnow, the chief burgess of the borough in 1866, testifies that the "agreement was entered into to keep the road from the railroad up to this street (Maple street) in repair." There was a bridge on that part of the road, and we think this explains the agreement. The master says: "No other proceedings to vacate said turnpike within the limits of said borough having ever been instituted, nor were any necessary." Certainly, there were none prior to the filing of the bill in this case, and no legal proceedings since that I know of. The master says "that in compliance with said agreement the corporate officers continued to maintain and keep in repair the small portion of the turnpike now in dispute, down to about the time they were ready to replace it with Vine street."

That was from the date of the agreement in writing, September 27, 1866, to the summer of 1884. He refers to the act of 1830 and the said agreement, and what was done under it, and concludes that all that "simply completed the act of vacating and abandoning the turnpike within the borough limits, in the manner provided for and pointed out by the law governing this case; and he is of the further opinion that the said turnpike, to wit, the portion here in question, ceased to be a public highway as soon as the corporate officers of the borough performed their part of the agreement in substituting the new road in place thereof."

This part of the finding of the master, in my opinion, is erroneous. The agreement of September 27, 1866, completed

the act. It is clear from the agreement itself that the alteration in the route of the turnpike, through the borough, had been made prior to the execution thereof, and that the said agreement neither contemplated nor permitted any subsequent alteration of the route. This was the understanding of all parties. The corporate authorities so understood it and acted upon it accordingly. In my opinion there can be no doubt whatever that the turnpike was only abandoned by the turnpike company and the new roads or streets of the borough accepted as a substitute therefor from the eastern limits of the borough as far as the junction of Maple street and. Mt. Carmel avenue, and no farther; and that part thereof from that point to the northern line of the borough (the part in dispute) remains a public highway, the same never having been vacated according to law. I am informed that it is the desire of the parties to take this case to the supreme court at once, that the question may be settled, and in order that they may do so at the present term I have proceeded without delay to decide it. I have determined it in accordance with the law and the facts as I believe them to be, and I think the question is fairly raised.

[The only important question in the case is whether the corporate authorities of a borough, in opening a street laid down on the plan of the town, can do so if the opening of such street will naturally and unavoidably close up and obstruct another public highway not existing on the said plan but running across it through lots and lawns, and which had become a highway in the manner stated in this opinion and the auditor's report, without in some legal way first causing the same to be vacated. Considering that the general borough laws, under which this borough was incorporated, give to the corporate officers such ample and general powers "to survey, lay out, enact, and ordain such roads, streets, etc., as they may deem necessary, and to provide for, enact, and ordain the widening and straightening of the same," and that the supreme court has decided that this power extends to vacation of streets, alleys, etc., I have come to the conclusion not to interfere, although I am by no means certain that this is a correct determination. It is very questionable in my mind whether the existing highway ought not to be first vacated by resolution or ordinance, and councils not permitted to exercise the right to open other streets until this is done.]

[That the municipal authorities alone have power to vacate a street in an incorporated borough was decided in the case of *Re* Osage Street, 90 Pa. 114.

This was done in the present case, by an ordinance passed after the institution of proceedings, but not until the court had dissolved the special injunction. Was the act of opening Vine street and thus necessarily closing the turnpike a legal vacation of the turnpike? The opening of that street was for the purpose, as we understand it, of making a street or highway to take the place of the turnpike and to be used instead thereof, as the evidence shows that it will be impossible to make the old turnpike fit for ordinary and convenient use as a highway if Vine street is to be kept open. I presume the question is more a matter of costs than anything else.] The turnpike will doubtless have to be abandoned. However, with that question we have nothing to do at present.

The question of costs must be disposed of. Many of the citizens of the borough, finding the old turnpike a safe, easy, and convenient approach to that part of the town, both from the adjacent township and the railroad station, saw that the borough authorities were about to destroy it by the opening of Vine street, and with the Attorney General instituted these proceedings to prevent it. The grade was easier and there was safety at the railroad. As Vine street is opened it is now necessary to pass along a narrow roadway on either side of the railroad track to get to either the old turnpike or railroad station, which is a serious matter; and there is perhaps not much wonder that the complainants remonstrated. There was no resolution or action by the town council at the time the bill was filed, vacating the turnpike; but the closing up of the same was threatened as the work of opening Vine street showed.

These proceedings have been carried on with much feeling on both sides, and an indictment is pending in the court of quarter sessions. A large amount of irrelevant and unnecessary testimony has been taken on both sides, and I think it would be unjust and oppressive to compel complainants to pay all the costs, especially those which were unnecessarily made.

[The complainants' bill is dismissed; and it is ordered that the complainants pay one half the costs, and that the respondents pay the other half.]

The assignments of error specified the portions of the opinion of the court inclosed in brackets, and also the action of the court in dismissing exceptions to the master's report which raised the same questions.

*Lewis C. Cassidy*, Atty. Gen., *W. B. Faust, Geo. Hill*, and *J. Nevin Hill*, for appellants.—The borough is bound to keep the road in question open and in a safe condition for the convenient use of the public: (1) By the general laws applicable to the subject; and (2) by the agreement of the borough with the turnpike company, that the former should keep the same forever in repair, until such time at least as it ceases to be a public highway.

The municipal officers cannot be relieved of the duty of keeping streets open and clear until they are vacated, except by a legal vacation of the highway and the consequent disappearance of the same. Erie City v. Schwingle, 22 Pa. 384, 60 Am. Dec. 87.

The borough council cannot authorize the obstruction of the road by an ordinance or resolution, unless such ordinance or resolution is passed in a proper manner, and is declaratory of the specific intention of the council to vacate the same. Third clause, § 27, of the act of April 3, 1851 (P. L. 326), Purdon's Digest, 173; *Re* Osage Street, 90 Pa. 114.

The interfering highway (Vine street) is a public highway throughout its entire length, according to the natural grades thereof at the time of dedication, the duty of altering which is a quasi judicial or legislative duty, which cannot be delegated by the council, but must be exercised by that body in a formal and legal manner. The power thus conferred upon the council is to be construed strictly; and until they clothe someone with the authority to open, widen, straighten, grade, or close a road or street, by legal resolution or ordinance, no authority to act in the execution of such plans exists, and anything done under pretense of such authority is an unwarranted assumption of public duties that will not be tolerated by the court. Thompson v. Schermerhorn, 6 N. Y. 92, 55 Am. Dec. 385; Stack v. East St. Louis, 85 Ill. 377, 28 Am. Rep. 619; Pettis v. Johnson, 56 Ind. 139; Kepner v. Com. 40 Pa. 124; People v. St. Louis, 10 Ill. 351, 48 Am. Dec. 339.

The prayer of the complainants, under the allegations of

their bill and the facts of the case, was that the threatened obstruction of the road be enjoined. Injunction was, therefore, the proper remedy. Act of June 16, 1836, P. L. 789; Wheeler v. Philadelphia, 77 Pa. 338; White v. Flannigain, 1 Md. 525, 54 Am. Dec. 668; Southwark R. Co. v. Philadelphia, 47 Pa. 314; State v. Mobile, 5 Port. (Ala.) 279, 30 Am. Dec. 564; Mott v. Pennsylvania R. Co. 30 Pa. 9, 72 Am. Dec. 664.

The acts of the respondents in closing the road pending this action were illegal; and therefore the court will not construe the law so that they shall be suffered to take advantage of their own acts, to defeat an action properly commenced. The general prayer for relief is appropriate to this case. Enfield Toll Bridge Co. v. Hartford & N. H. R. Co. 17 Conn. 40, 42 Am. Dec. 716; Warren & F. R. Co. v. Clarion Land & Improv. Co. 54 Pa. 28; Clark v. Martin, 49 Pa. 289; Wilhelm's Appeal, 79 Pa. 120; Hiern v. Mill, 13 Ves. Jr. 119; Slemmer's Appeal, 58 Pa. 155, 98 Am. Dec. 248; Danzeisen's Appeal, 73 Pa. 65.

*Voris Aulen, Wm. H. M. Oram,* and *Wm. A. Sober,* for appellees.—In view of the authority granted to the Centre Turnpike Road Company by the act of March 27, 1830 (P. L. 135), to change the route of the road, and the subsequent abandonment of the entire length of the turnpike within the borough limits, the old turnpike road, at all times after the year 1866, was simply a public highway at the option of the borough authorities; and the mere opening of a street in such a manner as to supply any portion of the old turnpike was of itself a sufficient vacation of the part thus supplied, without any other action of the borough authorities.

The agreement to repair referred to the new road, by which the old turnpike was supplied, that is, the streets and alleys of the borough as laid down upon the town plot.

The portion of the turnpike in question has been vacated, both by the action of the borough authorities in opening Vine street, under a formal resolution of the town council, and thus supplying its place, and by borough ordinance passed since the special injunction was dissolved. The court of quarter sessions had no jurisdiction in the premises, in either case. *Re* Osage Street, 90 Pa. 116; *Re* South Chester Road, 80 Pa. 370; *Re* Norwegian Street, 81 Pa. 349.

A resolution is only a less solemn or less usual form of an

ordinance. It is an ordinance still, if it is intended to regulate any of the affairs of the corporation. Kepner v. Com. 40 Pa. 130.

The presumption is that the resolution was regular. Louisville v. Hyatt, 2 B. Mon. 177, 36 Am. Dec. 594.

The authority to open and pave, as well as vacate streets, is among the powers of a municipal corporation. Williamsport v. Com. 84 Pa. 493, 24 Am. Rep. 208.

The eighth clause of the second section of the general borough law (P. L. 1851, p. 323), requiring notice to be given of a proposition to change or fix the roads, streets, etc., of a borough, is merely directory, and the omission to give the notice does not invalidate the proceedings. Pittsburg v. Coursin, 74 Pa. 400; White v. McKeesport, 101 Pa. 401.

In this state the right of eminent domain over the streets and highways of a borough is delegated to the borough authorities, and they are the sole judges of the necessity of any streets or highways within their municipal limits. Easton v. Neff, 102 Pa. 477, 48 Am. Rep. 213.

The defendants having admitted the right of the borough authorities to open Vine street, and also their right to legally vacate the old turnpike, a court of equity has no jurisdiction to entertain the bill of the complainants praying for an injunction. Wiser's Appeal, 9 W. N. C. 508.

The equity powers of the court of common pleas depend entirely upon statutes.

The act of 1836, under which chancery jurisdiction is conferred upon the several courts of common pleas, in the control and supervision of corporations, expressly excepts municipal corporations; if they exceed their powers, or abuse them, the courts may entertain jurisdiction; but here it is admitted that they are acting within the scope of their authority, and it is alleged that they proceeded irregularly. 2 Dill. Mun. Corp. p. 819, § 727, and notes.

An injunction will never, under any circumstances, be granted where the parties have an adequate remedy at law. The acts of 1851, 1856, 1878, and 1883 (1 Purdon's Digest, P. L. 137, 138, 141, 142, 149), give to all parties aggrieved full and adequate remedies for all injuries arising from the laying out, widening, straightening, opening, grading, or vacating any streets, lanes, or alleys in any borough in this commonwealth;

and these remedies must be alone pursued to the exclusion of all others as to all matters comprised within the provisions of the said acts of assembly. Reading v. Com. 11 Pa. 201, 51 Am. Dec. 534; Hagner v. Heyberger, 7 Watts & S. 106, 42 Am. Dec. 220.

Of course, we do not contend that, under the fifth clause of the latter part of § 13, courts of chancery cannot restrain municipal corporations from the commission of acts contrary to law, and at the same time prejudicial to the interests of the community, but such is not this case. The chancery powers of our court are not as extended as those of England.

The injunction power as given to us is restricted within narrow limits. The acts must be contrary to law, as well as prejudicial to the interests of the community and the rights of individuals. Wheeler v. Philadelphia, 77 Pa. 338; Wharton v. Cass Twp. 42 Pa. 358; Prescott v. Duquesne, 48 Pa. 120.

In Sharpless v. Philadelphia, 21 Pa. 147, 59 Am. Dec. 759, the bill was to restrain the unlawful subscription by the city to the stock of a railroad company.

In Wolbert v. Philadelphia, 48 Pa. 439, the court refused to restrain the erection of public works.

In Com. v. Rush, 14 Pa. 186, the bill was against individuals to whom the corporate authorities, contrary to law, had sold public property for private use.

Kerr v. Trego, 47 Pa. 292, simply decides that the court has a right to restrain a wrongful usurping body claiming to be the council from acting as council without lawful right.

In Southwark R. Co. v. Philadelphia, 47 Pa. 314, the question of jurisdiction was not raised; but the bill was to restrain the alleged unlawful removal of a railroad track from a street; the injunction was refused and the authority of the municipality over the streets directly asserted.

White v. Flannigain, 1 Md. 525, 54 Am. Dec. 668, was a bill against private individuals praying the removal of obstructions placed by them in the street, and is not pertinent here.

State v. Mobile, 5 Port. (Ala.) 279, 30 Am. Dec. 564, was a bill to restrain the erection of a market house in a street.

Enfield Toll Bridge Co. v. Hartford & N. H. R. Co. 17 Conn. 40, 42 Am. Dec. 716, was overruled in the same court and the injunction refused. See 44 Am. Dec. 556; 17 Conn. 454.

The question narrows down to whether the borough can be

prevented from opening streets properly adopted and decreed to be highways, because to do so would obstruct this short, narrow strip of an old turnpike not marked as a highway upon the borough plan, and which was long since abandoned by the turnpike company.

For the purposes of this case it is not material whether the part of the turnpike road in question is a public road or not.

The law is not so unreasonable as to impose a duty, the discharge of which it will not also excuse or defend, and more especially, by law imposed on a public officer, and, at peril of fine or imprisonment, required to be by such officer performed.

The corporate powers of the defendants, in regard to the regulation of streets, etc., as defined by charter, are: (a) To survey, lay out, enact, and ordain such roads, streets, etc. Purdon's Digest, 167, § 22. (b) To prohibit obstructions, etc., to the opening, etc. Id. § 23. (c) To regulate the roads, streets, etc., and to have needful jurisdiction over the same. Id. § 24.

The duties of the defendants as "the corporate authorities of the borough of Mt. Carmel" are: (a) To make a draft of the roads, streets, etc. Purdon's Digest, 171, § 67. (b) To give due and personal notice to all persons resident in the borough directly interested therein, of any proposition to fix or change the roads, streets, etc. Id. § 68.

This requires notice only to the adjoining owners, or occupants of land proposed for a new street, in whole or in part, to be laid out and opened upon lands not already dedicated to public use as a street or highway, as by original plot or plan of such borough.

To "fix or change" is the language, not to open or repair a street or highway of the borough already competently "fixed," located, and established.

Every burgess is authorized to carry into effect all by-laws and ordinances enacted by the town council. He is also required to cause to be opened all roads, streets, etc., that may be laid out by order of the proper court, and for neglect or refusal to do so is liable to the like penalties as are incurred by supervisors of the highways for a similar offense. Purdon's Digest, 172, § 76.

Private property cannot be taken for the use or purpose of the corporation without the consent of the owners, or until just compensation shall be made, etc. Purdon's Digest, 173, § 89; *Re* Walnut Street, 90 Pa. 207.

The streets, etc., when duly opened according to law, or by agreement of parties, are declared public highways over which the corporation shall exercise jurisdiction under the provisions of the general borough act. Purdon's Digest, 174, § 92; *Re* Walnut Street, 90 Pa. 207; *Re* Osage Street, 90 Pa. 114.

By original dedication of the projectors, and the application of the inhabitants of the town of Mt. Carmel to be incorporated into a borough, under and subject to the rights, powers, and duties provided by the general borough law, the street in question here was therefore declared a highway and accepted, as well by the act and deed of the parties as by the terms and conditions of such general borough law as the charter of such borough, immediately upon the granting of the prayer of the petitioners by the quarter sessions of Northumberland county. The necessity of both notice and further agreement of the parties, or "of other proceedings according to law," for the opening of such street, or the putting thereof in proper repair for public use, was thereby superseded. The reason not existing, the duty ceases, or is treated as already performed. *Re* Walnut Street, 90 Pa. 207.

Hence, Vine street, in the borough of Mt. Carmel, is, by the charter of that borough, in express terms declared a public highway, over which the corporation shall exercise jurisdiction under the provisions of that act. Purdon's Digest, 174, § 92.

And thereupon it is made the imperative duty of the defendants duly to open and put in repair, for public use, that street, at peril of fine and imprisonment. Purdon's Digest, 172, § 76.

Without an application in writing, signed by a majority of the freeholders within the limits of the town, before projected and laid out, in this instance at least, by the owner of the soil, setting forth not simply "the name, style, and title of the proposed borough," but also "a particular description of the boundaries thereof, exhibiting the courses and distances, in words at length, and accompanied with a plot or draft of the same," the quarter sessions could not have taken jurisdiction to incorporate the borough of Mt. Carmel. Act of April 1, 1834 (P. L. 163, § 2).

In fact, however, the law in this case was strictly complied with, including the submission of the plot or draft to the court

and grand jury, and an accurate description of the street now in question.

Under the adjudication in that proceeding it stands not only competently adjudged a highway, but it had the sanction of express rededication, by charter right, to public use; and therefore it remains not elective or discretionary with the defendants, whether they will open such street or not, and keep it in proper repair; but an omission in such premises is at their peril. Purdon's Digest, 174, § 92; Id. 172, § 76; Kensington v. Wood, 10 Pa. 93, 49 Am. Dec. 582; Mercer v. Pittsburgh, Ft. W. & C. R. Co. 36 Pa. 99; Erie City v. Schwingle, 22 Pa. 384, 60 Am. Dec. 87, and cases cited; Rapho v. Moore, 68 Pa. 404, 8 Am. Rep. 202, and cases cited; Bachler's Appeal, 90 Pa. 207.

It follows that the complainants have no injury or at least not such as may be made the subject of complaint by bill. Beltzhoover v. Gollings, 101 Pa. 293; White v. McKeesport, 101 Pa. 395; Kopf v. Utter, 101 Pa. 27.

It is not every obstruction to a highway (even by private persons) that is unlawful. Com. v. Passmore, 1 Serg. & R. 217; Palmer v. Silverthorn, 32 Pa. 65; Mallory v. Griffey, 85 Pa. 275, and cases cited.

But a municipal body, or other corporation organized by authority of law for public purposes, by express terms of the act of incorporation, or by the implied powers necessary and incident to the performance of the functions or public duties by such act imposed, may lawfully commit or perpetrate what might otherwise be a public wrong, or an infringement of private rights—such as the obstruction or impediment to the free use of a street, public road, or highway. Monongahela Nav. Co. v. Coon, 6 Pa. 379, 47 Am. Dec. 474; Philadelphia & T. R. Co.'s Case, 6 Whart. 25, 43, 36 Am. Dec. 202; Com. v. Erie & N. E. R. Co. 27 Pa. 339, 354, 67 Am. Dec. 471; Clarke v. Birmingham & P. Bridge Co. 41 Pa. 147; Monongahela Bridge Co. v. Kirk, 46 Pa. 112, 84 Am. Dec. 527; Pennsylvania R. Co.'s Appeal, 93 Pa. 150.

The Centre turnpike road is not a street or public highway of the borough of Mt. Carmel, independently of the compact which required its course to be changed to conform to the courses and distances of the streets of that borough, as shown by the plot or plan thereof. Wilson v. Allegheny City, 79 Pa. 272.

If, in pursuance of that compact, the rights and franchises

of the Centre Turnpike Road Company be not relinquished or surrendered to the corporate authorities of the borough, it is only for that company to complain.

But whether the Centre Turnpike Road Company passed its rights and franchises by the compact or agreement referred to in the answer or not, after the expenditure by the defendants' corporation of the large sum of money already incurred and to be incurred, on faith of such compact, even the company would be estopped from claiming damages and from asserting its original rights and franchises.

The right of the owner of the land over which that road was located to the reversion, upon the fulfilment of the compact or agreement of the company, made pursuant to the provisions of the act of March 27, 1830, is a vested one; and hence, it may not be withheld or taken except by regular proceedings for the opening of streets, etc., and for the assessment of damages (Pickering v. Rutty, 1 Serg. & R. 511); and even though authorized by act of the legislature (Western University v. Robinson, 12 Serg. & R. 29; Carr v. Wallace, 7 Watts, 394).

Neither the act of April 19, 1844, nor that of April 5, 1870, can be held to affect such owner's right to the reversion under the provisions of the act of March 27, 1830. By the former, only a qualified right of control and repair, subject always to the rights of the company, is pretended to be created, and this to pass to the supervisors of townships, not to the municipal authorities of boroughs or cities; under the latter act, upon the execution of the power by it confessed, a private right becomes at once absolute and vested. Purdon's Digest, 1279, 1280, §§ 56, 57; Id. 1440, § 55.

The right would not pass, until compensation made, or security given. Easton's Appeal, 47 Pa. 255; McClinton v. Pittsburg, Ft. W. & C. R. Co. 66 Pa. 404.

The right of eminent domain is never presumed to exist in a corporation, but arises only upon express legislative grant. Phillips v. Dunkirk, W. & P. R. Co. 78 Pa. 177; Mifflin v. Harrisburg, P. M. & L. R. Co. 16 Pa. 182.

And this, although the interest be but a life estate, or other vested right, less than the fee. Harrisburg v. Crangle, 3 Watts & S. 460; Wolford v. Morgenthal, 91 Pa. 30.

The reversion being granted by the act of 1830, no title re-

mained in the commonwealth to grant to another. Evans v. Erie County, 66 Pa. 222.

Without the consent of the Centre turnpike company, its franchises could not have been devested by the subsequent legislation, without compensation, no right except that of purchase being reserved by original grant (Atty. Gen. v. Germantown & Turnp. Road, 55 Pa. 466); nor the use diverted (Plymouth v. Jackson, 15 Pa. 44; Brown v. Hummel, 6 Pa. 86, 47 Am. Dec. 431); nor its franchises impaired (Iron City Bank v. Pittsburgh, 37 Pa. 340; Monongahela Nav. Co. v. Coon, 6 Pa. 379, 47 Am. Dec. 474; Pennsylvania R. Co.'s Appeal, 93 Pa. 150).

Where a plan for laying out a street is confirmed by the court, the public record of such proceedings is notice of the location of the street to purchasers of land which will be crossed by it when opened. Ake v. Mason, 101 Pa. 17.

Councils had authority to raise the grade of a street, and the city was not liable for damages to a lot owner injured thereby, although by a supplement to the city charter the councils were directed to appoint an engineer to plot and grade the streets, file the plot, etc., in the court of quarter sessions, subject to approval, etc., when such street should be adjudged, established, and fixed—which duty was omitted. Reading v. Keppleman, 61 Pa. 233.

As to when a power or duty is merely directory, see Pittsburg v. Coursin, 74 Pa. 400.

An injunction will be refused where a property owner seeks to restrain the construction by a railroad company of an elevated railway by means of a bridge across a river pursuant to the act of 1857 authorizing the sale of the public works, etc. Duncan v. Pennsylvania R. Co. 94 Pa. 435.

The title of a municipal corporation to the soil of its streets is paramount and exclusive; and no private occupancy, for whatever time, whether adverse or permissive, can vest a title inconsistent with it. Kopf v. Utter, 101 Pa. 27.

Grading and repairing a street, in accordance with an improper location, are not acts which constitute an official adoption of the wrong line by the borough such as will defeat its right to re-establish the original line. Id.

The right of the public to have the streets of a borough or city effectually opened and kept in repair for public use is not lost by delay in the opening and repairing of such streets. Id.

In this case no property owner or citizen of the commonwealth can be injured, in the contemplation of the law, by the opening and putting in proper repair of Vine street, if it ever has been competently declared or constituted a highway.

But where a property owner is injured by reason of a change in the grade from the original location of a street in a borough, his sole remedy is by petition to the common pleas, in the manner provided by the act of May 24, 1878 (P. L. 129).

Trespass in such case will not lie. Beltzhoover v. Gollings, 101 Pa. 293.

And the authority to grade and pave streets is among the implied powers of a municipal corporation, where not, as here it is, expressly granted. White v. McKeesport, 101 Pa. 394.

When a highway, which has once been the bed of an artificial road belonging to a turnpike company, comes by law within the control of the corporate authorities of a city, they are not bound to keep it in repair as an artificial highway, but merely so that it may be safe and convenient for ordinary travel. Com. ex rel. Atty. Gen. v. Philadelphia, 11 W. N. C. 485.

If the equity jurisdiction of the common pleas courts, in proceedings against municipal corporations, vests at all, it must appear by force and virtue of the legislative enactment owing to the limited character of such jurisdiction in Pennsylvania. It is not general or universal. Gilder v. Merwin, 6 Whart. 522.

From the acts of the legislature confirming equity jurisdiction municipal corporations seem expressly excepted (Purdon's Digest, 590, § 2); except when they shall be found acting in excess of their power or jurisdiction, or "in abuse of their privileges" (Hill v. Kensington, 1 Pars. Sel. Eq. Cas. 501).

The test in this case is whether the defendants have the power, or are under the duty, to treat the street in question as among the lawful streets of their municipality. If lawfully acting, they cannot be held as acting in abuse of their powers, or in excess of duty. Then, theirs would be the act of the municipality; and from the natural, necessary, or inevitable consequences, they would be absolved, as individuals; and the municipality also, at least in this form of action. It is a case of *damnum absque injuria.* Green v. Reading, 9 Watts, 382, 36 Am. Dec. 127; Philadelphia v. Randolph, 4 Watts & S. 514, 39 Am. Dec. 102; Henry v. Pittsburgh & A. Bridge Co. 8 Watts & S. 85; Charlton v. Allegheny City, 1 Grant. Cas. 208;

O'Connor v. Pittsburgh, 18 Pa. 187; *Re* Ridge Street, 29 Pa. 395; Carr v. Northern Liberties, 35 Pa. 324, 78 Am. Dec. 342; Allentown v. Kramer, 73 Pa. 406; Grant v. Erie, 69 Pa. 420, 8 Am. Rep. 272; Fair v. Philadelphia, 88 Pa. 309, 32 Am. Rep. 455; Mercer v. Pittsburgh, Ft. W. & C. R. Co. 36 Pa. 99; Barter v. Com. 3 Penr. & W. 253.

As to when a municipal corporation in the execution of its functions and powers may be held to act as a private individual, see Western Sav. Fund Soc. v. Philadelphia, 31 Pa. 185, 72 Am. Dec. 730.

Private charters are to be strictly construed; but when the commonwealth grants a public franchise over a highway, a clause relative to the use of such highway will not be so·construed as to defeat the grant. Whitaker v. Delaware & H. Canal Co. 87 Pa. 34.

But municipal corporations have immunities greater than others of a private character, although organized for public purposes.

As such, they cannot be proceeded against by indictment, as for obstructions to a highway, or for maintaining a nuisance, although other corporations, such as railroad or improvement companies, may. Northern C. R. Co. v. Com. 90 Pa. 300; Delaware Division Canal Co. v. Com. 60 Pa. 367, 100 Am. Dec. 570; Pennsylvania R. Co. v. Duquesne, 46 Pa. 223; Com. v. Reed, 34 Pa. 275, 75 Am. Dec. 661; Smith v. Elliott, 9 Pa. 345; Chestnut Hill & S. H. Turnpike Co. v. Rutter, 4 Serg. & R. 6, 8 Am. Dec. 675.

PER CURIAM:

This case was ably argued by the counsel for the appellants. We have examined the evidence and considered the law applicable thereto, yet we are not able to find that the learned judge committed any error in the decree made.

Decree affirmed and appeal dismissed, at the costs of the appellants.